UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

MRIDUL K. PATHAK AND MOLOPO ENERGY :
INDIA (P) LTD.,

                                                :     13 Civ. 2812

                 Petitioners,

-against-                                         :     Judge Jesse M. Furman

MOLOPO ENERGY LTD. (formerly known      :
as MOLOPO AUSTRALIA LTD.),

                                                :

                 Respondent.
————————————————————————x

## RESPONDENT MOLOPO ENERGY LIMITED'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION

FULBRIGHT & JAWORSKI L.L.P.
Attorneys for Respondent Molopo Energy Limited
666 Fifth Avenue
New York, New York 10103
Tel. No.: (212) 318-3000

OF COUNSEL:

Felice B. Galant

-and-

William D. Wood (*pro hac vice* application pending)
Lauren Hunt Brogdon (*pro hac vice* application pending)
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney
Houston, Texas 77010-3095
Tel. No.: (713) 651-5151

# RESPONDENT MOLOPO ENERGY LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION

Respondent Molopo Energy Limited ("Respondent") submits this memorandum of law in support of its motion to dismiss the Petition of Mridul K. Pathak and Molopo Energy India (P) Ltd. ("Molopo India") (collectively, the "Petitioners"), pursuant to Rules 12(b)(2), 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.[1] Before filing this motion, Respondent complied with Rule 3(B)(i) of the Court's Individual Rules and Practices in Civil Cases.

## SUMMARY OF ARGUMENT

Petitioners seek an order compelling Respondent to arbitrate claims before an Indian tribunal. However, Respondent is not subject to jurisdiction in this Court and is not party to an agreement to arbitrate these claims.

Respondent is an Australian corporation with offices in Australia and Canada. It does not have a corporate presence in New York. Nor is there a sufficient nexus between New York and the claims to support the exercise of long-arm jurisdiction. Petitioners do not allege that their claims arose out of activities in New York. Rather, their allegations involve Mr. Pathak's services in assisting Respondent with entry into the coal mining market in India. The only relevant connections between the claims and New York are Mr. Pathak's residence and the fact that Respondent allegedly made payments to him into a New York bank account for his services.

The Petition should also be dismissed because Respondent and Petitioners are not parties to an agreement to arbitrate. The purported claims in their draft demand for arbitration (the

---

[1] Pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the Petition are assumed to be true solely for purposes of this motion. Respondent does not accept these allegations as true and nothing set forth herein constitutes an admission as to the truth of any of the allegations.

"Draft Demand") arise from an alleged oral consulting agreement entered into between Mr. Pathak and Respondent in 2007. Petitioners do not allege that Mr. Pathak's consulting agreement included an agreement to arbitrate, nor would such an oral agreement be enforceable.

The arbitration provision that Petitioners attempt to invoke is contained in an agreement between an Indian government agency and Respondent for a project to extract methane from coalfields in India (the "Agreement"). It provides for arbitration in India and that it is governed by Indian law. Neither Mr. Pathak nor Molopo India, an entity formed to operate Respondent's potential business in India, are parties to the Agreement. It was signed in August 2009, two years after Mr. Pathak allegedly agreed to be Respondent's consultant. There is, therefore, no valid basis on which Petitioners can seek to compel arbitration under the Agreement. The absence of an applicable arbitration agreement warrants dismissal for lack of subject matter jurisdiction as well.

For these reasons, the Petition should be dismissed.

## FACTUAL ALLEGATIONS

### I. The Parties

The Petition alleges that Mr. Pathak's primary residence is in New York. (Pet. ¶¶ 1, 17). According to the Petition, Mr. Pathak also maintained a residence in India during the relevant period. (Pet. ¶¶ 1, 13.) Although not set forth in the Petition, Molopo India is an Indian corporation, with its only place of business in India. (Declaration of Paul Belliveau, dated May 24, 2013, ¶ 7.) ("Belliveau Decl.") Molopo India is an affiliate of Respondent. (*Id.*)

Respondent is an international development and exploration company with offices in the City of Melbourne, State of Victoria, Commonwealth of Australia, and Calgary Canada. (Pet. ¶

4.) Contrary to Petitioners' assertion that Respondent is a Canadian company (Pet. ¶ 4),[2] Respondent is an Australian corporation, whose shares on traded on the Australian Securities Exchange. (Belliveau Decl. ¶ 2.) At the time Mr. Pathak and Respondent entered into the alleged consulting agreement, its principal place of business was in Melbourne, Australia. (*Id.*)

## II. Mr. Pathak's Oral Employment Agreement

Petitioners claim that after years of discussions with Mr. Pathak regarding Respondent's possible entrance into the Indian mining market, in 2007, Respondent engaged Mr. Pathak as an "initial point of contact to obtain Indian business." (Pet. ¶¶ 5, 12.) They claim that, at some point in time, Respondent orally agreed to pay Mr. Pathak $100,000 per year and grant him a 5% interest in Molopo India for his services. (Pet. ¶ 6.) Petitioners concede that there was no "formal contract." (Pet. ¶ 14.) Pursuant to that arrangement, Respondent allegedly made payments to Mr. Pathak's bank account in New York. (Pet. ¶¶ 6, 13.)

## III. The CMM Project Agreement

The Petition alleges that Molopo India was formed to develop several potential projects in India, including a coal mining project with Coal India Ltd. ("Coal India") and the Indian government agency, the Central Institute of Mining and Fuel Research ("CIMFR") (the "CMM Project"). (Pet. ¶ 3.) Petitioners assert that Mr. Pathak's "high level contacts" allowed Respondent to secure the CMM Project, which involved the analysis and extraction of methane gas from coal mines in Jharia and Raniganj, India. (Pet. ¶¶ 5, 14.) The Agreement for the CMM

---

[2] In fact, Petitioners mailed the Petition to Respondent at its offices in Calgary, Canada. (*See* Docket Entry No. 3). In good faith, Respondent accepted service although the Petition was not properly served under the applicable Federal Rules. Additionally, Respondents contest the characterization of the parties' pre-service interactions in Petitioners' Certificate of Service. (*See id.*). The "offer to mediate" to which Petitioners refer, to the extent made, was a confidential settlement communication that is neither relevant to the issue of service nor appropriate to disclose.

Project provided that Coal India would become the owner of any assets extracted from the mines. (Pet. Exh. 1.)

CIMFR and Respondent executed the Agreement on August 8, 2009. (Pet. Exh. 1). Respondent's executives, Stephen Mitchell and David Hobday, signed on Respondent's behalf. (Pet. ¶ 6.) Mr. Pathak signed on behalf of Molopo India as Respondent's agent. (*Id.*) Neither Molopo India nor Mr. Pathak is a party to the Agreement. (Pet. Exh. 1.) Rather, the only parties are Respondent and CIMFR, and the only legal obligations in the Agreement run between CIMFR, as agent for Coal India, and Respondent. (*Id.*)

### IV. The Termination of the Consulting Relationship

Petitioners allege that a feud arose in late 2010 or early 2011 within Respondent's management as to whether it should enter the Indian market, which feud eventually led to their replacement by new management. (Pet. ¶¶ 7, 14.) They allege that in the Spring of 2011, Respondent's new management allegedly invited Mr. Pathak to Melbourne, Australia, for a "strategic review process." (Pet. ¶ 16.) During that visit, new management allegedly informed Mr. Pathak of Respondent's desire to exit the Indian market, and asked for Mr. Pathak's assistance with its exit strategy. (Pet. ¶¶ 8, 16.) Petitioners claim that Mr. Pathak was successful in this effort, and Respondent was able to withdraw from the Agreement without any consequences. (Pet. ¶¶ 8, 16, 17.)

Following Respondent's exit from the Indian market, Petitioners claim that new management "unceremoniously discarded" Mr. Pathak. (Pet. ¶ 9.) Petitioners concede that Mr. Pathak was engaged for the purpose of assisting Respondent with entering the Indian market. (Pet. ¶ 12.) In October 2011, Respondent allegedly sent Mr. Pathak a written termination notice, after receipt of several invoices from him. (Pet. ¶ 19.) Petitioners claim that Respondent refused to pay Mr. Pathak "even minimal statutory severance payments required under Australian law,"

despite allegedly making "huge severance payments" to Respondent's "discarded" Australian executives. (*Id.*)

Mr. Pathak intended to "walk away on amicable terms" and asked for three months' severance pay. (Pet. ¶¶ 9, 19.) In response, new management purportedly asked him for documentary evidence of the work he had performed, and questioned whether he had taken corporate funds. (Pet. ¶ 20.) These "last and final straws" caused Mr. Pathak to prepare the Draft Demand for filing in an Indian arbitral tribunal. (*Id.*) As far as Respondent is aware, no such arbitration has been commenced, and the Draft Demand attached to the Petition is unsigned and undated. (Pet. Exh. 2.)

## V.     The Present Action

Petitioners seek an order (i) compelling Respondent to proceed with arbitration in accordance with the arbitration provision in the Agreement; and (ii) directing Respondent to agree on a venue other than India for the arbitration or enter an appearance in the yet to be commenced arbitration in India. In the Petition, however, they readily acknowledge that they may not be in the right forum to seek such relief.

They admit that "at first glance," it might appear that a motion to compel arbitration should be brought in India, as the arbitration provision in the Agreement designates India as the place of the arbitration and governing law. (Pet. ¶ 10; Exh. 1 at ¶ 10.) Petitioners posit that because Respondent, a company with offices in Australia and Canada, is no longer pursuing the Agreement in India, this Court is "now a fairer and more appropriate venue." (Pet. ¶ 10.) Aside from payments made to Mr. Pathak's bank account in New York and his residence here, there are no other allegations of relevant contacts between New York and the relief sought.

As demonstrated below, the Petition should be dismissed on the grounds that the Court lacks personal jurisdiction over Respondent and because the Petition fails to state a claim for

relief, namely, a legal basis to compel Respondent to arbitrate. Subject matter jurisdiction is similarly lacking, due to the absence of an agreement to arbitrate.

## ARGUMENT

### I. The Court Lacks Personal Jurisdiction Over Respondent.

The plaintiff bears the burden of proving the Court has personal jurisdiction over a foreign defendant. *J. McIntyre Machinery, Ltd. v. Nicastro*, __ U.S. __, 131 S. Ct. 2780 (2011). When a defendant challenges personal jurisdiction through a motion to dismiss supported by affidavit evidence, as Respondent has, the plaintiff may not rest on the allegations of the complaint. Instead, the plaintiff must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction. *See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 388 (S.D.N.Y. 2002), *aff'd*, 385 F.3d 159 (2d Cir. 2004).

Petitioners seek an order from this Court to compel an Australian corporation to proceed with arbitration under a provision that designates India as the place of arbitration, under Indian arbitral rules of procedure and Indian substantive law. Petitioners' claims are based on services performed by Mr. Pathak, if at all, in India. Even assuming, *arguendo*, the arbitration provision in the Agreement were applicable -- and it is not -- Petitioners cannot obtain such relief, because the Court lacks personal jurisdiction over Respondent.

Under Section 204 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "Convention"):

> Any action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

Thus, one of two requirements must be met: either this Court must have personal jurisdiction over Respondent, or the place of arbitration designated in the subject arbitration agreement must be located in this District.

It is undisputed that the Agreement names India, not New York, as the place of arbitration. That Agreement, entered into between CIMFR and Respondent, provides for arbitration "in accordance with Indian Arbitration and Conciliation Act 1996 at a mutually agreed place in India." (Pet. Exh. 1 at ¶ 10.) Therefore, the place of arbitration prong fails.

The only other basis for jurisdiction is not met, because the Court cannot exercise jurisdiction over Respondent, a non-resident, under New York's long-arm statute, CPLR 302(a). CPLR 302(a) permits the exercise of personal jurisdiction over a non-resident defendant if it: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; (3) "commits a tortious act without the state causing injury to person or property within the state," if it also "regularly does or solicits business" in the state or "reasonably expects the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or (4) owns or uses real property in the state.

None of these requirements is satisfied here. Respondent is an Australian corporation with offices in Australia and Canada and does not transact business in New York. CPLR 302(a)(1). (Belliveau Decl. ¶ 2.) It is not licensed to do business in New York, it has no offices or telephone listing in New York, and it does not have employees regularly assigned to do business here. (*Id.* ¶¶ 3, 4.) Nor does it advertise in publications that are regionally published in New York, or solicit business in New York. (*Id.* ¶ 6.)

Petitioners have not alleged that Respondent committed a tortious act within the state. CPLR 302(a)(2). Rather, they claim damages under theories of quantum meruit and breach of an alleged oral agreement; both sound in contract, not tort. Petitioners have not alleged that Respondent committed a tortious act outside of New York that caused injury within New York, or expected it to have consequences in New York. CPLR 302(a)(3). Nor does Respondent own or use real property in New York. CPLR 302(a)(4).

Moreover, all essential elements of Petitioners' claims involve transactions that took place in India. Mr. Pathak was allegedly engaged as a consultant to assist Respondent with entering the Indian coal mining market. He allegedly participated in several meetings with the heads of Coal India and CIMFR in furtherance of his services for Respondent. He claims that he succeeded in securing a mining project with Coal India and was instrumental in Respondent's entering into the Agreement. Mr. Pathak alleges that he was a director of Molopo India, whose only office was in India. He maintained residences in New York and India, so that he could perform such services and, impliedly, spend time with his wife, a pediatrician with a New York-based practice.

Mr. Pathak has not even alleged that his claims arise under New York law. Instead, he argues that Australian law governs. There are simply no facts that would support jurisdiction over Respondent in New York in connection with Petitioners' claims.

In fact, the only contacts pled that have any connection to New York are Mr. Pathak's residence in New York and Respondent's payments to him in a New York bank account. Such contacts, however, are insufficient to support the exercise of jurisdiction over Respondent. This is because the residency of a plaintiff and payments made to him in New York are not an adequate basis to subject a non-resident to suit here. *Fantis Foods, Inc. v. Standard Importing*

*Co.*, 49 N.Y.2d 317, 326 (N.Y. 1980); *see DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 423 (S.D.N.Y. 2010) ("far more contacts within the state of New York" are needed to confer personal jurisdiction over defendant who merely transferred funds to a bank account in New York); *Credit Suisse First Boston Corp. v. Continental Savings Bank*, No. 99-Civ-2792, 2000 WL 122132, at *5 (S.D.N.Y. Jan. 31, 2000) (where "all critical events" occurred outside the state, the in-state "disbursement of funds by defendant must be regarded as a remote consequence" and is too "attenuated" for long-arm jurisdiction).

That Mr. Pathak may feel financial injury in New York, because he lives here, does not create an adequate nexus with the forum state for purposes of personal jurisdiction. The New York Court of Appeals has made clear that non-physical injuries in New York, such as financial injury, do not satisfy its long-arm statute:

> It has . . . long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.

*Fantis Foods, Inc.*, 49 N.Y.2d at 326; *Polansky v. Gelrod*, 20 A.D.3d 663, 665, 798 N.Y.S.2d 762, 764 (3d Dep't 2005) ("[T]he situs of such a nonphysical commercial injury is the place where 'the critical events associated with the dispute took place' and not where the resultant monetary loss occurred."); *Harem-Christensen Corp. v. M.S. Frigo Harmony*, 477 F. Supp. 694, 697 (S.D.N.Y. 1979) (finding no personal jurisdiction where the only "tenuous" connection was that plaintiff suffered financial loss there solely by virtue of its domicile); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) ("the occurrence of financial consequences in New York due to the fortuitous location of plaintiff in New York is not a sufficient basis for jurisdiction under § 302(a)(3)").

Finally, even if Petitioners could establish the requisite minimum contacts under CPLR 302(a), it would be fundamentally unfair to subject Respondent to suit in New York. Factors to consider in determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice include (i) the burden on the defendant; (ii) the forum state's interest in resolving the dispute; (iii) the plaintiff's interest in resolving the dispute; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of contraversies; and (v) the shared interest of the several states in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Ct. of Ca.*, 480 U.S. 102, 113 (1987); *see Nicastro*, 131 S. Ct. 2780.

Applying these factors, the balance tips heavily in Respondent's favor. The alleged conduct that forms the basis of the claims took place in India, not New York. It did not involve the interests of the State of New York, other than the incidental fact of Mr. Pathak's residence here and payments made to his New York bank account. Respondent is an Australian corporation with offices in Australia and Canada. The Petition seeks an order pursuant to an inapplicable arbitration clause providing for arbitration in India under Indian law. New York and its citizens (other than Mr. Pathak) have no interest in the outcome of this action. For these reasons, subjecting Respondent to personal jurisdiction would be fundamentally unfair.

Consequently, the (i) Court lacks personal jurisdiction over Respondent, and (ii) the Petition fails to satisfy either prong of Section 204 of the Convention.

## II. The Petition Must Be Dismissed for Failure to State a Claim and Lack of Subject Matter Jurisdiction, Because Petitioners Are Not Parties to an Agreement to Arbitrate.

In assessing a motion to dismiss for failure to state a claim, "[a]ll well-pleaded factual allegations are assumed true and are viewed in the light most favorable to the Respondents. . . . Conversely, allegations which are not 'well-pleaded' are not accepted as true for Rule 12(b)(6) purposes." *Grossman v. Citrus Ass'n of the N.Y. Cotton Exch.*, 706 F. Supp. 221, 229 (S.D.N.Y.

1989). "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.), *cert. denied*, 519 U.S. 1007 (1996); *Xerion Partners I LLC v. Resurgence Asset Mgmt. LLC*, 474 F. Supp. 2d 505, 516 (S.D.N.Y. 2007) ("bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss").

A motion to dismiss for lack of subject matter jurisdiction should be granted "when the district court lacks the statutory or constitutional power to adjudicate [the case]." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion to dismiss, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex. Rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchoine v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

As demonstrated below, even accepting Petitioners' well-pleaded allegations as true, the Petition fails to state a claim and the Court lacks subject matter jurisdiction, because Respondent and the Petitioners never entered into an agreement to arbitrate claims between them. What Petitioners have attempted to do is improperly boot-strap an agreement to arbitrate between Respondent and an Indian government agency, CIMFR, for Mr. Pathak's personal claims. Those claims, however, arise under an entirely separate, alleged oral agreement between a company, Respondent, and its alleged former consultant, Mr. Pathak. The Court should not countenance this contortion of that agreement to arbitrate, by permitting Petitioners to invoke it on Mr. Pathak's claims.

### A. Petitioners' Claims Do Not Arise Under the Agreement and, Therefore, the Arbitration Provision Within It Is Inapplicable to Their Claims.

Because their purported claims spring from a separate alleged oral agreement, Petitioners cannot invoke the arbitration provision in the Agreement to resolve them. *See Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983) (where a dispute arises under a "separate, side agreement, connected with the principal agreement which contains the arbitration clause," "arbitration of that dispute cannot be compelled merely based upon the existence of an arbitration clause in the main agreement"); *Rochdale Village, Inc. v. Pub. Serv. Employees Union, Local No. 80*, 605 F.2d 1290, 1296-97 (2d Cir. 1979) (to be arbitrable, dispute must arise under original contract with arbitration clause rather than separate, collateral agreement).

The Petition and the Draft Demand make clear that any alleged broken promises made by Respondent to Mr. Pathak stem from a separate alleged oral agreement. (Petition ¶ 14 and Draft Demand ¶ 5: "the personally cordial and trusting relationship that Pathak by this time had developed with Prior Management as a result of their long relationship left him perfectly comfortable with proceeding in reliance on their assurances without any need for a formal contract"; Draft Demand ¶ 11: "[New Management] made it clear to [Pathak] for the first time that promises of continued work with and for Molopo were never going to be kept"; Petition ¶ 6: management "assured Pathak that the soon to be expected increase in the value of his [Molopo India] shares would render his salary's size insignificant"; Petition ¶ 8: "they cajoled Pathak into helping them with suggestions that, with Molopo's assistance, he would end up able to continue to oversee and fulfill the Agreement.")

In addition, in the Draft Demand, Petitioners seek (1) damages on a quantum meruit basis for the amounts allegedly saved by Respondent through Mr. Pathak's services pursuant to an alleged oral agreement; (2) damages equal to the value of Mr. Pathak's Molopo India shares had

Respondent entered the Indian market based on alleged oral assurances to him; and (3) damages for Mr. Pathak's services in managing Molopo India based on an alleged oral agreement. (Pet. Exh. 2 at 7.) Those alleged oral agreements and assurances were all collateral to the Agreement, and not incorporated in any way into the Agreement.[3]

This is further evidenced by the fact that the alleged oral consulting agreement between Mr. Pathak and Respondent was entered into in 2007, two years prior to the execution of the Agreement in August 2009. (Belliveau Decl. ¶ 7; Pet. ¶ 12.) There is no mention of Mr. Pathak's alleged consulting agreement in the Agreement.

Moreover, the only parties to the Agreement are CIMFR and Respondent. Executives of Respondent and CIMFR signed for each party. Mr. Pathak also signed the Agreement, but he did so on behalf of Molopo India, as Respondent's agent, and not in any personal capacity. Neither Mr. Pathak nor Molopo India are parties to the Agreement. Nowhere in the Petition or Draft Demand do Petitioners assert claims based on obligations owed under the Agreement. Nor could they, as there are no obligations owed to either Mr. Pathak or Molopo India thereunder.

Arbitration is contractual by nature. *Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (S.D.N.Y. 1995). "A party cannot be required to submit to an arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Thus, despite the "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) (internal quotations omitted), "an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Fisser v. Int'l Bank*, 282 F.2d

---

[3] Petitioners have not claimed that Respondent orally agreed to arbitrate claims between them, but even if they had, such an agreement would be unenforceable under the Convention. *See* 9 U.S.C. § 202.

231, 233 (2d Cir. 1960); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993). The Second Circuit has recognized limited exceptions to that general rule, but no such exception can be established in Petitioners' case.

Equitable estoppel is the main vehicle by which a non-signatory may have standing to compel arbitration.[4] Non-signatories seeking to compel a signatory to arbitrate under this theory may only do so if two elements can be proved. First, "the issues the nonsignatory is seeking to resolve in arbitration [must be] intertwined with the agreement that the estopped party has signed." *Ragone v. Atl. Video at Manhattan Center*, 595 F.3d 115, 126-27 (2d. Cir. 2010). The fact that the dispute is intertwined with the arbitration agreement is necessary, but not sufficient, to grant the non-signatory standing to compel arbitration. *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008).

In deciding whether a dispute is "intertwined" with the arbitration agreement, courts look to its language to determine the scope. *Holzer v. Mondadori*, No. 12-Civ.-5234, 2013 WL 1104269, *9, *12 (S.D.N.Y. Mar. 14, 2013) (holding that, despite taking part in negotiations of agreement containing arbitration clause, non-signatory did not have legal right to demand arbitration); *Denney v. Jenkens & Gilchrist*, 412 F. Supp. 2d 293, 296, 299-300 (S.D.N.Y. 2005) (on remand from the Second Circuit, holding that non-signatory third party could not avail itself of arbitration clauses in certain agreements merely because it performed certain functions for plaintiffs under agreements' terms).

---

[4] "The Second Circuit has recently acknowledged that 'it remains an open question' whether non-signatories may compel arbitration pursuant to any theory aside from equitable estoppel." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011). The only other theory which has found acceptance, it noted, is the protection afforded to an employee or disclosed agent regarding claims that fall within the arbitration agreement. *Id.* The reason an agency theory would not work is discussed at page 16.

Petitioners' alleged dispute with Respondent is not intertwined with the Agreement. To the contrary, that dispute involves Mr. Pathak's purported claims for compensation for his consulting services, specifically, allegedly assisting Respondent with entering into the Indian market. The Agreement, on the other hand, is for Respondent's potential development of a project to analyze and extract methane gas from coal mines in India, for an Indian government agency. The claims are based on Mr. Pathak's alleged consulting relationship with Respondent and alleged oral assurances -- not the obligations between CIMFR and Respondent under the Agreement. As such, they are not sufficiently intertwined with the agreement to arbitrate in the Agreement.

Even if Petitioners' claims were intertwined with the Agreement, he must also demonstrate "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not party." *Ragone*, 595 F.3d at 127; *see also Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (a signatory to an arbitration agreement must have reasonably believed, when entering the arbitration agreement with another party, that it was also agreeing to arbitrate disputes that might arise with a third party).[5] The justifiable or reasonable basis requirement for this prong of the estoppel inquiry is based on "the black letter rule that the obligation to arbitrate depends on consent." *Sokol Holdings, Inc.*, 542 F.3d at 361. It would not be reasonable for Respondent to have believed it had agreed to arbitrate claims with an existing consultant, Mr. Pathak, when it signed the

---

[5] Neither can Petitioners claim that Mr. Pathak may compel arbitration as a third-party beneficiary to the Agreement, since he has not alleged that the Agreement's signatories intended for him to benefit directly. *See McPheeters v. McFinn, Smith, & Co.*, 953 F.2d 771, 773 (2d Cir. 1992) (per curiam).

Agreement with a governmental agency, CIMFR. As such, Petitioners' claims are not a "similar dispute" that would justify arbitration under an agreement to which they were not parties.

Nor may Petitioners invoke the arbitration provision on an agency theory. Courts within this Circuit have held that a non-signatory agent of a signatory principal may only compel arbitration where the signatory principal commenced an action against the non-signatory agent on the subject matter of the underlying agreement. *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993); *Alghanim*, 828 F. Supp. 2d at 650. That is not the case here, as Respondent has not sued Petitioners.

Furthermore, signing an agreement as agent for a disclosed principal does not render the agent a party to an arbitration clause within that agreement. *Interocean Ship Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 537 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054 (1976); *Matter of Arbitration Between Keystone Shipping Co. and Textport Oil Co.*, 782 F. Supp. 28, 32 (S.D.N.Y. 1992); RESTATEMENT (SECOND) OF AGENCY § 320 (1958); *see also Westmoreland v. Sadoux*, 299 F.3d 462, 466-67 (5th Cir. 2002) (holding that "a non-signatory cannot compel arbitration merely because he is an agent of one of the signatories"), *cert. denied*, 537 U.S. 1232 (2003). Consequently, Mr. Pathak's signature on Molopo India's behalf as agent for Respondent does not permit either him or Molopo India to rely on the arbitration provision of the Agreement for resolution of their claims.

In sum, none of the exceptions to the non-signatory rule apply. Consequently, as non-signatories to the Agreement, Petitioners may not invoke its arbitration clause and the Petition fails to provide a basis to compel arbitration.

**B.  The Absence of an Agreement to Arbitrate Also Deprives the Court of Subject Matter Jurisdiction Over Petitioners' Claims and the Relief Sought.**

Subject matter jurisdiction in this case is premised entirely on the Convention, and whether the parties agreed to arbitrate a matter that is governed by its rules. A valid, applicable, written agreement to arbitrate the dispute between the parties is required before the Convention comes into play. For the reasons discussed above, there is no such agreement here. Accordingly, the Convention cannot provide the basis for subject matter jurisdiction in this Court. *See* 9 U.S.C. § 202 (an arbitration agreement arising out of a commercial, legal relationship falls under the Convention). As there is no other basis for subject matter jurisdiction, the Petition should be dismissed on this ground as well.

## CONCLUSION

For the foregoing reasons, Respondent Molopo Energy Limited respectfully requests, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(b)(1), that this Court enter a final judgment dismissing the Petition to Compel Arbitration of Petitioners Mridul K. Pathak and Molopo Energy India (P) Ltd., and for such other and further relief to which it may be entitled.

Dated: New York, New York
   May 24, 2013

Respectfully submitted,

FULBRIGHT & JAWORSKI L.L.P.

By: _____
Felice B. Galant
666 Fifth Avenue
New York, New York 10103
Tel. No.: (212) 318-3000

OF COUNSEL:

William D. Wood (*pro hac vice* application pending)
Lauren Hunt Brogdon (*pro hac vice* application pending)
FULBRIGHT & JAWORSKI L.L.P.
Fulbright Tower
1301 McKinney
Houston, Texas 77010-3095
Tel. No.: (713) 651-5151