UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MRIDUL K. PATHAK and MOLOPO ENERGY INDIA (P) LTD., <br> Petitioners, <br><br> against <br><br> MOLOPO ENERGY LTD. (formerly known as MOLOPO AUSTRALIA LTD.), <br> Respondent. | 13-cv-02812 (JMF) |

MEMORANDUM OF LAW OF PETITIONERS MRIDUL K. PATHAK
AND MOLOPO ENERGY INDIA (P) LTD. IN OPPOSITION TO
RESPONDENT MOLOPO ENERGY LTD.'S
MOTION TO DISMISS THEIR PETITION TO COMPEL ARBITRATION

The Solovay Practice
Attorneys for Petitioners Mridul K. Pathak
and Molopo Energy India (P) Ltd.
260 Madison Avenue, 15th Floor
New York, New York 10016
(646) 278-4295

## MEMORANDUM OF LAW OF PETITIONERS
## MRIDUL K. PATHAK AND MOLOPO ENERGY INDIA (P) LTD

MRIDUL K. PATHAK AND MOLOPO ENERGY INDIA (P) LTD. (jointly "Claimants") submit this memorandum of law in opposition to the motion of Molopo Energy Ltd. ("Molopo") to dismiss Claimants' Petition to Compel Arbitration.

### FACTUAL ALLEGATIONS BRIEFLY REVIEWED AND CORRECTED

The Court is respectfully referred to (a) the accompanying Affidavit of Mridul K. Pathak (herein "Pathak" and the "Pathak Affidavit") for a full description of the applicable facts and an explanation of why those submitted by Molopo in support of the pending motion to dismiss are to a surprising extent incomplete and unreliable; and (b) the accompanying Affirmation of his counsel, Norman Solovay, for a discussion of the facts and law demonstrating the inapplicability, once the true facts are taken into account, of Molopo's remaining legal arguments.

The Pathak Affidavit alleges (at p. 9) "that "there are more incorrect than correct allegations" in the Molopo Memorandum of Law. After an explanation which connects the absence and/or suppression of accurate corporate information concerning Molopo's entry and departure from India to problems created by the current management's ouster of Molopo's founders (see pp. 1-7), the Pathak Affidavit goes on to attempt to set the record straight by identifying the most egregious of the errors and omissions (see pp. 7-12).

A review of the Molopo Memorandum's Summary of Argument suggests that most of its arguments, having been either clearly shown to be incorrect and/or having been strongly challenged by contrary factual showings, are no longer viable. For example, its statement that that there are no allegations that the claims arose out of activities in New York is clearly untrue as is its surprising and incorrect argument that Pathak has no standing under the Agreement because "It was signed in August 2009, two years after Mr. Pathak allegedly agreed to be

1

Respondent's consultant." Moreover, its claims that Molopo has no corporate presence in New York and that there is no sufficient nexus between it and New York to support the exercise of long arm jurisdiction are at best quite dubious and are certainly strongly controverted.

What remains after discarding the factual misstatements as Molopo's most seemingly plausible argument is the legal one that "Respondent and Petitioners are not parties to an agreement to arbitrate." Of course, Molopo can't and doesn't mean that literally and the reasons why it is untrue insofar as what they do mean are set forth in Counsel's Affirmation (at pp. 6-8) as well as hereinafter.

## ARGUMENT

When the correct operative facts are taken into account, Claimants are able to use and rely on the arguments and authorities Molopo itself cites in its Memorandum in support of their request that Molopo's motion be denied and that it be ordered to select a mutually desired venue and proceed with the arbitration.

A.   <u>This Court Clearly Has Jurisdiction to Direct Molopo to Arbitrate</u>

Molopo's Memorandum states and cites authority (at p. 6) for the proposition that when a defendant challenges personal jurisdiction through a motion to dismiss" the plaintiff may not rest on the allegations of the complaint…[but] must, by affidavit or otherwise, set forth specific fact showing that the Court has jurisdiction."

Claimants have certainly done this. (See, <u>e.g.</u>, Pathak Affidavit, pp. 7-9.) Once those sworn allegations as to extensive services for MEIP performed by Pathak in New York are credited, as they must be in the absence of any reliable contrary proof, the authority of this Court to direct an arbitration is confirmed by the very authorities the Memorandum cites (at pp. 8-9) in opposing jurisdiction.

Nor does the fact that the arbitration agreement specified a locale for the arbitration other than the Court where the petition to compel is brought oust otherwise applicable jurisdiction See, in this regard, 9 U.S.C, Sec.4 of the Federal Arbitration Act's provision that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court… for an order directing that such arbitration proceed in the manner provided for in such agreement." (Emphasis added.) See also Louis Dreyfus Negoce S.A., 252 F.3d at 225 (construing an arbitration clause broadly where the provision encompasses "any dispute" and contains no language limiting its applicability to specific disputes); Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 653 (2d Cir 2004) (Federal policy strongly favors the enforcement of arbitration agreements); and Mitsubishi Motors Corp., 473 U.S. at 631 (where the dispute is international in scope, that policy applies with "special force").

B.   Claimants Were Not Only Proper But Necessary Parties to the Agreement

Counsel's Affirmation deals at length and in detail with Molopo's argument that Claimants are not parties to and have no standing under the Agreement to invoke its arbitration clause. The somewhat amusing aspects of the accidental rebuttal of that argument by Molopo's own Memorandum contained in the Affirmation (at p. 6) will not be repeated here. But the provisions of the Agreement which make it clear that Claimants were not only proper but necessary parties were reproduced and underlined in the Affirmation and will similarly also be set forth here:

Following its initial typical recitation of the date and whom the Agreement is made "by and between," the operative provisions are:

> "Council of Scientific and Industrial Research . . . (hereinafter referred to as CSIR) having one of its national laboratories, Central Institute of

Mining and Fuel Research . . . (hereinafter referred to as CIMFR . . .) on the first part.

AND

Molopo Australia Ltd. Melbourne, Australia with office at Level 14, 31, Queen Street, Melbourne, VIC, 3000 Australia (hereinafter referred to as Molopo), a company which is listed in Australian stock Exchange <u>and has also formed a subsidiary in India named Molopo Energy India (P) Ltd with its office at 10/C, Janak Road, Kolkata, 700 029, India (hereinafter referred to as MEIP)….second part</u>. (Emphasis added.)

\* \* \*

Whereas Molopo Australia has agreed to provide technical assistance for implementation of the project work (Surface and Sub-Surface) for assessment of CMM/AMM in working as well as abandoned mines.  With the completion of the specified resource appraisal of volumetric assessment of the contained gas in mines, a pilot production testing programme will provide an estimate of gas deliverability, reservoir modeling, financial analysis and market studies, which will indicate optimal gas utilization option, i.e. design of electric power generation and/or compressed natural gas leading to commercial development.  This process will entail gas gathering system and pipeline.  <u>Once this stage is achieved in the project with commercial status, the gas can be shared between CIL, CIMFR, Molopo Australia and MEIP as felt appropriate by the parties for proper future utilization of gas</u>. (Emphasis added.)

\* \* \*

The capital equipments required by Molopo Australia Ltd. will be procured by Molopo Australia Ltd. in Australia, after observing necessary purchase formalities.  As the item of investigation is of specialized nature, the requirement will be more of proprietary items, as per purchase rules governing the purchase policy in India.  <u>As most of the payments are to be made in foreign currency, Molopo Energy India Pvt. Ltd., the local subsidiary will be responsible for proper examination, scrutiny, utilization factor, validity of the claim, for the instruments as specified under the project before release of the fund for the purchase of equipments.  The organization will be responsible for transportation of the equipments from the area of purchase till deployment in the area of operation in India, with proper safety as per insurance rules.  All these procedures will be handled by Molopo Energy India Ltd. as the main agency for safety utilization and final deployment of the equipments at the required areas of operation.</u> (Emphasis added)

\* \* \*

4

> <u>Molopo Energy India (Pvt.) Ltd. (MEIP) is a subsidiary of Molopo and will act as liason in local presence, in furtherance and total implementation of the project in both technical and administrative issues with BCCL/ECL, as per the requirement of the project from time to time. It will also be responsible for necessary recruitment of technical/non-technical personnel in consultation with Molopo all items of Capital and Revenue Expenditure for the implementation and completion of the project in both the phases of the project. MEIP has the local banking facility in India so that funding for procurement of equipments from Australia can be facilitated through MEIP.</u> (Emphasis added.)

C. <u>Although the Arbitration Can If Necessary Be Held In India Doing So No Longer Makes Sense</u>

As indicated in Counsel's Affirmation, (at p. 8) the provision for arbitration in India with the venue to be chosen by mutual consent was made for reasons that are no longer applicable, namely the anticipation by all parties of their continuing work and presence there. If insisted upon and directed by the Court it can and will still be held in India at a mutually selected venue per the Arbitration Agreement. But doing so would no longer seem to make sense for any good faith purpose.

## **CONCLUSION**

For the foregoing, it is respectfully requested that the Court:

a. Deny Molopo's Motion to Dismiss Claimants' Petition;

b. Grant the Petition's request to compel Respondent, Molopo to proceed with the arbitration, preferably at a venue of mutual choice but, if Molopo insists and the Court so directs, then in an Indian venue chosen in this manner designated in the Arbitration Demand; and

c. Grant such other and further relief as the Court may deem just and proper.

Dated: June 10, 2013
      New York, New York

                                       The Solovay Practice
                                       Attorneys for Petitioners Mridul K. Pathak and
                                           Molopo Energy India (P) Ltd.
                                       260 Madison Avenue, 15th Floor
                                       New York, New York 10016

By: _____
            Norman Solovay (NS6752)