```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
MRIDUL K. PATHAK and MOLOPO ENERGY INDIA                               :
(P) LTD.,                                                              :
                                                                       :
                              Petitioners,                             :
                                                                       :
              -v-                                                      :
                                                                       :
                                                                       :
MOLOPO ENERGY LTD. (formerly known as                                  :
MOLOPO AUSTRALIA LTD.),                                                :
                                                                       :
                              Respondent.                              :
                                                                       :
-----------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/02/2013
```

13 Civ. 2812 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

  Mridul K. Pathak and Molopo Energy India (P) Ltd. ("MEIP") petition this Court, pursuant to the Federal Arbitration Act, Title 9, United States Code, Section 1, *et seq.*, to compel Molopo Energy Ltd. (formerly known as Molopo Australia Ltd.) ("Molopo"), an Australian company with a significant presence in Canada, to arbitrate — in India — claims for severance pay incidental to contracts to extract methane from Indian coal fields.  Respondent moves to dismiss the petition, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the grounds that this Court lacks subject matter jurisdiction over this dispute, that the Court lacks personal jurisdiction over Molopo, and that there is no valid agreement to arbitrate between Molopo and either Petitioner.  For the reasons stated below, Respondent's motion to dismiss is GRANTED, and the petition is DISMISSED.

## BACKGROUND

**A. The Business Relationship**

  The following factual account is taken from the Petition, the motion papers filed before this Court, and the affidavits attached thereto.  *See Phx. Bulk Carriers Ltd. v. Oldendorff*

*Carriers Gmbh & Co., KG.*, No. 01 Civ. 11777 (NRB), 2002 WL 31478198, at *3 n.8 (S.D.N.Y. Nov. 6, 2002) ("[W]here an arbitration contract dispute is centered around the meaning of the communications between the parties, rather than authenticity of these communications, . . . the court may decide the issue of contract formation, without a hearing, 'on the papers' alone." (quoting *U.S. Titan Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir. 2001)). Molopo is "an international energy development and exploitation corporation" doing business out of offices in Melbourne, Australia, and Calgary, Canada. (Pet. ¶ 4). Sometime in 2007, Respondent engaged Pathak — who had retired from a "high level multi-dimensional civil service career in India and abroad" — to assist it in beginning business operations in India. (*Id.* ¶ 11). Pathak was retained pursuant to an oral contract, which specified that Pathak would receive a $100,000 salary plus equity in Molopo's Indian subsidiary, but this oral contract was never formalized in a writing. (*Id.* ¶¶ 6, 14).

Molopo organized a subsidiary, MEIP, to manage its affairs in India; Pathak was named Managing Director and Vice Chairman of, and received a 5% interest in, MEIP. (*Id.* ¶ 6; Pathak Aff. ¶ 6). The fruit of MEIP's efforts was an $8,000,000 agreement by and between Molopo and India's Central Institute of Mining and Fuel Research ("CIMFR")[1] for the extraction of methane from coal fields owned by the Indian government (the "CMM Agreement"). (Pet. Ex. 1). The CMM Agreement was dated August 8, 2009. (Pet. Ex. 1 ¶ 1).

Approximately one year after the CMM Agreement was signed, however, Molopo began exploring the possibility of withdrawing from the Indian market. (Pet. ¶ 7). A few months later, in the spring of 2011, Molopo informed Pathak that it intended to cease operations in India and sought his help in doing so. (*Id.* ¶ 15). In order to achieve Molopo's withdrawal without incurring significant penalties and fees, Pathak conceived a plan for Molopo to transfer

---

[1] Both sides dispute who was a party to the CMM Agreement. For the sake of clarity, and because it is immaterial for present purposes, the Court refers to CIMFR, as well as its delegating agencies Coal India Ltd. and the Council of Scientific Industrial Research, as simply CIMFR.

ownership of MEIP to him and another Molopo executive; significantly, Molopo did not transfer or assign its rights or responsibilities under the CMM Agreement to Pathak or MEIP.  (*Id.* ¶ 17).  After Pathak's negotiations with CIMFR to avoid legal action against Molopo or MEIP were completed, Molopo stopped paying Pathak and gave no response to the invoices Pathak sent to Molopo's Australian offices.  (*Id.* ¶¶ 18-19).

Pathak and MEIP petitioned this Court to compel arbitration on April 29, 2013.  (Docket No. 1).  They rely on the text of the CMM Agreement, which contains an arbitration clause (Pet. Ex. 1 ¶ 10), and seek an order compelling Respondent to proceed with arbitration proceedings in India, as the terms of the CMM Agreement specify (*id.*), or, alternatively, requiring Respondent to specify an alternative venue for arbitration.  (Pet. ¶ 22).

**B.  The CMM Agreement**

The text of the CMM Agreement unambiguously requires that "all disputes arising out in [*sic*] course of conducting this Project" be either settled by mutual consent or referred to arbitration "in accordance with [the] Indian Arbitration and Conciliation Act 1996 at [a] mutually agreed place in India."  (Pet. Ex. 1 ¶ 10).  The CMM Agreement, which is dated August 8, 2009 (*id.* ¶ 1), states at its outset that it is between the "Central Institute of Mining and Fuel Research, Barwa Road, Dhanbad" and "Molopo Australia Limited, Melbourne, Australia."  (*Id.* at 1).  The first section states that it is "by and between" the following parties:

> 1.1    Council of Scientific and Industrial Research, a Society Registered under the Society Registration Act (XXI of 1860), having its registered office at Anusandhan Bhawan, 2 Rafi Marg, New Delhi – 110 001 (hereinafter referred to as CSIR) having one of its national laboratories, Central Institute of Mining and Fuel Research at Barwa Road, Dhanbad – 826 015 (hereinafter referred to as CIMFR, which expression shall, unless repugnant to the context or meaning thereof, include its successors and assignees) on the first part.
>
> **AND**
>
> 1.2    Molopo Autstralia [*sic*] Ltd. Melbourne, Australia with office at Level 14, 31, Queen Street, Melbourne VIC, 3000, Australia (hereinafter referred to as Molopo), a company which is listed in Australian stock Exchange and has also

3

> formed a subsidiary in India named Molopo Energy India (P) Ltd [*sic*] with its office at 10/C, Janak Road, Kolkata, 700 029, India (hereinafter referred to as MEIP, which expression shall, unless repugnant to the context or meaning thereof, include its successors and assignees), on the second part.

(*Id.* ¶¶ 1.1-1.2).

The CMM Agreement concluded, "IN WITNESS WHEREOF, the undersigned, duly appointed representatives of the organisations signed the present agreement." (*Id.* at 9). The document is then signed by six individuals. First, it is agreed to on behalf of CIMFR by Dr. Mohan Prasad, "Scientist G & Head, BDIL," and on behalf of Molopo Australia by Mr. Stephen Mitchell, "Managing Director." (*Id.*). Additionally, it is signed by four witnesses, two from CIMFR and two from Molopo. The witnesses from CIMR are Mr. Asit Kumar Roy, "In-Charge, Project Monitoring & Evaluation Cell," and Dr. Ajay Kumar Singh, "Scientist and Head, Methane Emission and Degasification." (*Id.*). The witnesses from Molopo are Dr. David Hobday, "Director, Molopo Energy India (P) Ltd," and Petitioner, Mr. Mridul Kumar Pathak, "Director, Molopo Energy India (P) Ltd." (*Id.*). The witness signature blocks are numbered for each party, and Pathak is listed second on the Molopo side. (*Id.*).

As for the scope of the agreement to arbitrate, the "Project" is defined as the "Recovery and Utilisation of Coal Mine Methane in Jharia and Raniganj Coalfields." (*Id.* ¶ 2.1). That Project was described, generally, as one to survey, extract, transport, and sell methane taken from coalfields in India. (*Id.* ¶¶ 2.1-2.4). The CMM Agreement does not discuss any aspect of Molopo's staffing of the Project.

## DISCUSSION

Respondent moves to dismiss the Petition on three grounds. First, Respondent argues that this Court lacks personal jurisdiction over it under New York's long-arm statute, N.Y. C.P.L.R. 302(a), because it has neither conducted any business within the state of New York nor reasonably expected any tortious act to have consequences in New York. (Resp't Molopo

Energy Limited's Mem. Law Supp. Mot. To Dismiss Pet. ("Resp't Mem.") 6-10).  Second, Respondent argues that, because neither Pathak nor MEIP is a party to the CMM Agreement, and because any oral employment agreement could not have contained a binding arbitration clause, it did not agree to arbitrate any claims with either Petitioner, and therefore the Petition fails to state a claim.  (*Id.* at 10-16).  Finally, Respondent challenges this Court's subject-matter jurisdiction over this Petition because the CMM Agreement does not govern Pathak's employment with Respondent and because neither he nor MEIP was a party to the CMM Agreement.  (*Id.* at 17).

## A.  Subject-Matter Jurisdiction

Subject-matter jurisdiction is a threshold question this Court has an independent duty to establish.  *See, e.g.*, *Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 929-30 (2d Cir. 1998).  Additionally, the Federal Arbitration Act, including its codification of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (the "New York Convention"), grants subject-matter jurisdiction over those foreign arbitration petitions that "fall[ ] under the [New York] Convention."  9 U.S.C. § 203.  Any arbitration agreement that is "considered as commercial" and is not solely between citizens of the United States falls under the New York Convention.  *Id.* § 202.

Respondent moves to dismiss the Petition pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Respondent does not assert that this Court lacks subject-matter jurisdiction because the parties are solely citizens of the United States or that the CMM Agreement is not "considered as commercial," but rather asserts that the alleged lack of an arbitration agreement between the parties to this action deprives this Court of jurisdiction.  (Resp't Mem. 17).  The Second Circuit has made clear, however, that challenges to the existence of an arbitration clause go to the merits rather than jurisdiction.  *See, e.g.*, *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 660 (2d Cir. 2005) ("[Respondent's] argument depends entirely upon its view of the merits of the case, and therefore does not involve a lack of subject matter jurisdiction, although cases

5

confusing these issues are frequently found in the reports."). So long as the Petition's allegations are not immaterial, frivolous, or made solely to obtain jurisdiction, it is sufficient to "claim[] jurisdiction under the [New York] Convention; describe[] a written agreement between [the parties]; . . . allege[] that a legal relationship was created between [the parties]"; and describe an arbitration agreement. *Id.* Petitioners allege the existence of an arbitration agreement creating a legal relationship between them and Respondent. Accordingly, this Court has subject-matter jurisdiction to consider the Petition.

**B.  Personal Jurisdiction**

Even after subject-matter jurisdiction has been established, a court must still establish that it has the power to compel Respondent to proceed with arbitration. *See Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 622 F. Supp. 25, 27 (S.D.N.Y. 1985). Respondent moves, pursuant to Rule 12(b)(2), to dismiss the Petition on the ground that this Court lacks personal jurisdiction over it. On a motion to dismiss for lack of personal jurisdiction, a petitioner must establish, by good-faith allegations or other evidence, a *prima facie* case that the Court has power over a particular respondent. *See, e.g.*, *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 388 (S.D.N.Y. 2002), *aff'd sub nom.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).

The New York Convention does not independently provide personal jurisdiction over parties alleged to have agreed to arbitrate claims. *See Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 398 (2d Cir. 2009). To establish personal jurisdiction under the New York Convention, Petitioner must demonstrate that the Court has personal jurisdiction under New York state law or pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. *See, e.g.*, *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, No. 11 Civ. 420 (RJH), 2012 WL 204102 (S.D.N.Y. Jan. 24, 2012). New York's long-arm statute, N.Y. C.P.L.R. 302(a), sets out four paths to personal jurisdiction. Because there is no evidence that Molopo

either owns real property in New York, *see id.* 302(a)(4), or committed any tortious acts within New York state, *see id*. 302(a)(2), Petitioner must establish either (1) that Respondent has transacted "business within" New York or has contracted "anywhere to supply goods or services in" New York, *see id.* 302(a)(1); or (2) that Respondent has committed a "tortious act . . . causing injury to person or property within the state" *and* that Respondent either:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in [New York], or

> (ii) expects or should reasonably expect the act to have consequences in [New York] and derives substantial revenue from interstate or international commerce[,]

*id.* 302(a)(3)(i)-(ii).

In support of its motion to dismiss, Respondent submits the declaration of Paul Belliveau, Molopo's Chief Financial Officer. (Docket No. 11 ¶ 1). Belliveau swears that Molopo is an Australian corporation with offices in Australia and Canada. (*Id.* ¶ 2). He further swears that Molopo has no business presence or employees who work regularly in New York (*id.* ¶¶ 3-4), that it owns no real property in New York (*id.* ¶ 5), and that it solicits no business in New York (*id.* ¶ 6). In response, Petitioners submit an affidavit from Pathak. (Docket No. 23). Pathak swears that, while he was employed by Respondent, he "regularly received visits" in New York from Molopo executives, and that such visits related to Molopo business other than that performed by Pathak for MEIP. (*Id.* ¶ 17). Attached as exhibits to Pathak's affidavit are copies of e-mails he received from Molopo executives describing their attempts to attract investor funding from individuals in New York and to discuss Pathak's activities for the company. (*Id.* Exs. 4-5). Pathak also describes a business dinner he arranged with a representative of Coal India in New York (*id.* ¶ 19), alleges that he received his salary in his New York bank account (Pet. ¶ 13), and states that his communications with Molopo most often took place from his apartment in New York (Pathak Aff. ¶ 20).

7

These activities are insufficient to establish, for purposes of New York's long-arm statute, that Molopo transacts business within New York. New York law is clear that, for purposes of C.P.L.R. 302(a)(1), "the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980). As a result, personal jurisdiction lies "only where a defendant's direct and personal involvement on [its] own initiative projected [itself] into New York to engage in a sustained and substantial transaction of business." *Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted). Because the evidence offered by Petitioners, when considered separately from the fact of Pathak's residence in New York, fails to establish that Molopo's transaction of business in New York was "sustained" or "substantial," this Court finds that the first prong of C.P.L.R. 302(a) is not satisfied. *See, e.g.*, *DirectTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 423 (S.D.N.Y. 2010) (noting that cases in which the transaction of business in New York is supported by a single transfer of funds to a New York bank account "almost always" involve "far more" additional contacts with the state).

In order to establish personal jurisdiction over a non-domiciliary such as Respondent under C.P.L.R. 302(a)(3), Petitioners must show that Molopo committed a tortious act causing injury to Pathak in New York. Respondent argues that Petitioners have failed to do so because they allege only claims that sound in contract, rather than tort, and because the situs of Pathak's injury was not in New York. (Resp't Mem. 8-9). The first of these arguments is unavailing: so long as the allegations, taken as a whole, constitute the elements of a tort, the "tortious act" element of C.P.L.R. 302(a)(3) is satisfied. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980).

The second argument is more persuasive, however, because New York courts apply a situs-of-injury test, rather than an economic-effect test, to determine the location of injury under § 302(a)(3). As the Second Circuit has explained,

> Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury. The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff.

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (alterations, internal citations, and internal quotation marks omitted). In this case, all of Petitioners' allegations relate to actions taken outside the United States, including the formation of both the CMM Agreement and Pathak's oral employment agreement, the termination of the CMM Agreement, and the extraction of methane gas from coal fields. Thus, although Molopo may have had some contacts with New York, it committed no tortious act that caused injury within New York. This Court therefore finds that, based on the facts presented here, it lacks personal jurisdiction over Respondent.

## C.  Agreement To Arbitrate

Even if this Court did have personal jurisdiction over Respondent, Petitioners have failed to adequately allege the existence of a binding arbitration agreement between either of them and Molopo. It is axiomatic that "arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (internal quotation marks omitted). Nothing in the Federal Arbitration Act "authorizes a court to compel arbitration . . . by any parties[] that are not already covered in the agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Although Pathak signed the agreement, merely signing an arbitration agreement for a disclosed principal is insufficient to render the agent a party to the contract. *See, e.g., In re Arbitration Between Keystone Shipping Co. & Textport Oil Co.*, 782 F. Supp. 28, 32 (S.D.N.Y. 1992) ("Signing an arbitration agreement as an agent for a disclosed principal is not

9

sufficient to render the agent a party to the arbitration clause.").[2]  Furthermore, Pathak plainly signed merely as a witness.  (Pet. Ex. 1 at 9).  And there is no evidence that the oral employment agreement between Pathak and Molopo contained any arbitration provision, even if such an agreement were enforceable.  Accordingly, even if there were personal jurisdiction over Respondent, the Petition would be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, Respondent's motion is GRANTED, and the petition is DISMISSED.  The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: New York, New York
       October 2, 2013

_____
JESSE M. FURMAN
United States District Judge

---

[2] Although Respondent admits that there are some exceptions to the rule that a non-party cannot invoke an agreement to arbitrate (Resp't Mem. 13-17), Petitioners rely on the exceptions only in the most conclusory fashion (Pathak Aff. ¶ 33).  Petitioners' limited reliance on these exceptions fails substantially for the reasons stated in Respondent's initial memorandum of law.